UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

O.L. MATTHEWS, M.D., P.C.,
               Plaintiff,

vs.                             Case No.  18-11659-GAD-RSW
                                Hon. Gershwin A. Drain

HARLEYSVILLE INSURANCE COMPANY,
               Defendant.

_____/

| | |
|---|---|
| Mark A. Pitchford P66951 | Michael F. Schmidt P25213 |
| Attorney for Plaintiff | Nathan Peplinski P66596 |
| 10 W. Square Lake Rd., Suite 100 | Attorneys for Defendant |
| Bloomfield Hills, MI  48302 | 1050 Wilshire Drive, Suite 320 |
| (248)785-3777 | Troy, MI 48084 |
| mark@pitchlawpc.com | (248)649-7800 |
| | (248)649-2316 (fax) |
| | mschmidt@harveykruse.com |
| | npeplinski@harveykruse.com |

_____/

**DEFENDANT HARLEYSVILLE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT AND NOTICE OF HEARING THEREON**

      PLEASE TAKE NOTICE that on a date and time to be set by the court,

defendant Harleysville Insurance Company will move for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no

genuine issue as to any material fact and there is no coverage for plaintiff's claimed

damages pursuant to the Harleysville Businessowners Policy issued to the plaintiff.

      This motion is based on the records and files in this cause, and is supported by

a brief filed with this motion.

      In accordance with Local Rule 7.1, concurrence has been requested, but

-1-

HARVEY KRUSE    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS    1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

denied, and thus, it is necessary to bring this motion.

**CERTIFICATE OF SERVICE**

I hereby certify that, on the below listed date, the foregoing pleading has been electronically filed with the Clerk of the Court via the Electronic Case Filing system which will send notice of filing to all attorneys of record.

/s/Janice A. Albertson
Secretary to Michael F. Schmidt
DATED:  January 15, 2019

Respectfully submitted,

BY: /s/Michael F. Schmidt
    Michael F. Schmidt P25213
    Nathan Peplinski P66596
    HARVEY KRUSE PC
    1050 Wilshire Drive, Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

O.L. MATTHEWS, M.D., P.C.,
                Plaintiff,

vs.                              Case No.  18-11659-GAD-RSW
                                       Hon. Gershwin A. Drain

HARLEYSVILLE INSURANCE COMPANY,
                Defendant.

_____/

| | |
|---|---|
| Mark A. Pitchford P66951 | Michael F. Schmidt P25213 |
| Attorney for Plaintiff | Nathan Peplinski P66596 |
| 10 W. Square Lake Rd., Suite 100 | Attorneys for Defendant |
| Bloomfield Hills, MI  48302 | 1050 Wilshire Drive, Suite 320 |
| (248)785-3777 | Troy, MI 48084 |
| mark@pitchlawpc.com | (248)649-7800 |
| | (248)649-2316 (fax) |
| | mschmidt@harveykruse.com |
| | npeplinski@harveykruse.com |

_____/

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
<u>JUDGMENT</u>**

**HARVEY KRUSE**     A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

## CONCISE STATEMENT OF QUESTION PRESENTED

Whether defendant Harleysville Insurance Company is entitled to summary judgment in this suit regarding insurance coverage for alleged damage to the plaintiff's property, because coverage is barred by multiple Exclusions and Limitations contained in the policy.

## CONTROLLING AUTHORITY

This matter is controlled by *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005); *Allstate Ins Co v Keillor*, 450 Mich 412, 420; 537 NW2d 589 (1995); *Libbey-Owens-Ford Co v Ins Co of North America*, 9 F3d 422, 429-430 (CA 6, 1993).

## SUMMARY OF ARGUMENT

The plaintiff seeks recovery for water damage from rain which allegedly leaked through the roof of the plaintiff's office.  The depositions of the plaintiff, two roofers, the plaintiff's expert, the defendant's expert and the reports of the plaintiff's expert and defendant's expert establish that the roof was poorly designed allowing for ponding of 5 inches of water before any water would drain whenever it rained, which resulted in ever increasing sagging of the roof deck and roof membrane between the joists, and holes and tearing of the roof membrane, requiring that the roof, should have been replaced 15-20 years before the alleged roof leaks at issue.  All of these conditions were specifically excluded from coverage.  The policy of insurance is not a guarantee or warranty that a roof will not leak.

## STATEMENT OF FACTS

-1-

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**A.** **POLICY PROVISIONS**

The policy provides coverage for "direct physical loss of or damage to Covered Property . . .caused by or resulting from any Covered Cause Of Loss."  (Ex 12, 15, p 1 of 47) The policy defines Covered Causes Of Loss as risks of direct physical loss unless the loss is excluded by exclusions or limited by limitations.  (Ex 12, 15, p 2 of 47)

The pertinent exclusions include loss or damage caused by or resulting from wear and tear, deterioration and settling (Ex 12, 15, pp 17-18 of 47), and loss or damage caused by or resulting from faulty, inadequate or defective design, specifications, workmanship, repair, construction, and maintenance.  (Ex 12, 15, p 19 of 47) All of these exclusions have been established by the testimony and evidence.

The limitations include that the insurer will not pay for loss or damage to the interior of any building caused by or resulting from rain unless the building first sustains damage by a Covered Cause Of Loss to its roof, and there could be no Covered Cause Of Loss to the roof because any loss or damage to the roof was caused by or resulting from the excluded risks.  (Ex 12, 15, p 2 of 47)

**B.** **DEPOSITION TESTIMONY OF O. L. MATTHEWS, M.D.**

O. L. Matthews, M.D. (Matthews) is the President and owner of O. L. Matthews, M.D., P.C.  (Ex 1, p 4) Matthews' business bought a building at 1286 Middlebelt in the early 1980s, he had no idea how old it was when he bought it and did not know what the condition of the roof was when he bought it.  (Ex 1, pp 7, 13)

He did not recall specifically when there was ever any maintenance or work done to the roof before January, 2017. (Ex 1, pp 13-14) He recalled there were leaks through the roof in January and February, 2017, and he made a claim to Harleysville which Harleysville denied. (Ex 1, pp 27-28) At the time of the leaks he hired Roy's Roofing to provide maintenance to the roof. (Ex 1, pp 29-30) The Roy's Roofing representative told Matthews that because of the weather conditions he could not do full maintenance but would come back when the weather was better for the maintenance, but never returned. (Ex 1, pp 30-31)

Matthews admitted that he knew that the roof still needed to be maintained and five months later obtained an estimate from King's Roofing dated 8/9/17. (Ex 1, pp 44; Ex 3) Matthews did not give King's Roofing a start date, and before King's Roofing started the work, the leak, which is the subject of this lawsuit, occurred on a Thursday in August, 2017. (Ex 1, pp 45, 50-51, 56) King's Roofing then came out on the following Saturday and Sunday and did the work that was from the estimate Matthews previously received. (Ex 1, pp 62-63) Matthews admitted that he had never been on the roof at any time whatsoever and did not know of any incident that would have caused the leaks in the roof in August, 2017. (Ex 1, pp 64-65, 84-85)

## C.  <u>TESTIMONY OF DARRELL WOOD.</u>

Darrell Wood is the owner of Roy's Roofing. (Ex 4, Wood's dep, p 5) Wood went to Mathews' office in January and again in February, 2017 because of roof leaks. When he first went out to check the roof in January, 2017 all he saw on the

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

roof was water, it was "just all water. . .it was like a lake."  After he removed the water, he noted that there were a lot of seams open and a lot of bad spots.  (Ex 4, pp 7-8) The roof was "messed up", "damaged" and had a lot of "bad" and "sagging" areas and all he did was a temporary-type repair which he described as a "band-aid", and he testified that the roof needed to be replaced. (Ex 4, 8, 10, 11) Wood also testified he told the doctor that the roof drain was not working which is why the water was ponding on the roof and there would have to be someone continually going up on the roof to remove the water, there were a lot of seams that were open and holes in the roof, the roof was not good, and in his opinion the roof should have been replaced. (Ex 4, pp 11-14) No one from the doctor's office ever called him to come back out and do any additional work.  (Ex 4, pp 14-15)

**D.    TESTIMONY OF ANDREW YONKO.**

Andrew Yonko is the President and owner of King's Roofing.  (Ex 5, Yonko dep, p 5) Yonko was contacted by Dr. Matthews in July, 2017 to provide a quotation to repair or replace the roof. (Ex 5, pp 11-12; Ex 6, ¶¶ 4-5)  A roof is supposed to drain completely of water after rain and if the roof drain was an 1 ¾" or 2" above the surface of the roof this was not appropriate and would have to be fixed, because it would result in water always being on the roof, which is wrong. (Ex 5, pp 15-16) Yonko inspected the roof in July, 2017 and provided an estimate for the work to Dr. Matthews dated 8/9/17. (Ex 5, pp 16-17; Ex 7, estimate) Yonko could not do the work immediately after the July, 2017 inspection, but then had a call from Dr.

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Matthews on 8/19/17 that there was water coming into the building (Ex 5, p 18). Yonko came out starting on 8/19/17 and did the work on his estimate. (Ex 5, p 19) When Yonko was doing his repairs on 8/19/17 he noted that there were low spots on the roof.  (Ex 5, pp 26-27) Per his earlier estimate (Ex 7, ¶ 5) he had noted "deterioration open seams" which was from "wear and tear" and testified that the roof would have a serviceable life of 15 to 20 years, "So every 15 to 20 years that roof should be replaced. . .Yes." \(Ex 5, p 38) [This roof had not been replaced since at least the early 1980's, a period in excess of 35 years.  (Ex 1, pp 13-14)] When Yonko was on the roof to make the repairs in August, 2017 he saw there were "sagging" roof panels in numerous areas as confirmed by the photos from the report of the plaintiff's expert, Mike Williams of Williams & Beck. (Ex 5, pp 49-50) When Yonko was doing his repairs he noted that the roof membrane was being pulled apart by the weight of the water "Q. Is that a condition that's bad for the roof, if the membrane is being pulled apart like that by the weight of the water?  A. Yes. . .Q. So the roof is sinking down below the drain? A.  It's like wear and tear, maintenance."  (Ex 5, pp 53-54)

The condition of the drain being 1 ¾" above the roof deck was not good and a "design" problem and the ponding and having the drain too high was going to result in leakage through the roof because it was going to cause the membrane and seams to tear and pull apart.  (Ex 5, pp 55-56)

Yonko testified that the photos taken by plaintiff's expert Williams one month after Yonko made his repairs showed that the weight of the water was causing more

**HARVEY KRUSE**   ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

tears which was a "wear and tear" problem and that the drain being too high and the ponding would continually cause the roof membrane to pull apart and tear the seams and membrane. (Ex 5, pp 57-58) These photos also show "all kinds of water" on the roof with ponding that could cause damage to the roof and the membrane; and holes in the membrane and pulling apart of the membrane at the seams. (Ex 5, pp 61-62)

Yonko admitted that a properly constructed roof is not supposed to have "sagged" areas and he would recommend that the roof be replaced because it had outlived its life from "wear and tear". (Ex 5, p 63) Yonko testified he believes that the leakage and holes that he saw in the roof were caused by the water that had ponded on the roof tearing the membrane. (Ex 5, p 72)

**E. TESTIMONY AND REPORT BY PLAINTIFF'S EXPERT MICHAEL WILLIAMS**

The plaintiff retained Michael Williams as plaintiff's expert. Per his report (Ex 9), Williams inspected the roof on 9/20/17, approximately four weeks after the date of the incident. At that time he "... observed standing water ponding on approximately 75% of the flat portion of the roof." He found "multiple low spots on the roof.... the underlying roof deck appears to be failing and has sagged substantially between the roof joists.... as the deck panels have sagged, the weight of snow/ice/water has tensioned and stretched the roof membrane." At the time of his inspection although it had not rained for several days and had been warm and sunny "the measured water depth in several of the ponded areas was 2 1/2 inches.... the roof

**HARVEY KRUSE**    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

joists lines being almost an inch above the water surface in the ponded area and the roof drain being 1" – 1½" above the roof deck, the roof deck must support the weight of almost 5 inches of water before it can discharge into the roof drain."  (Ex 9, p 3)

2.    Williams' conclusions included:

3.    The roof deck itself, however, is failing.  The more it sags, the more water is ponded every time it gets wet.  The more water is ponded in the low spots, the more it sags.  With this continued cycle of progressive failure of the deck, the entire deck must be replaced.

4.    The roof system has been repaired many times.  The repairs have also added to the weight of the roof.  The additional weight plus the standing water caused by the deck sags has overcome the roof deck's ability to carry such loads.

5.    The weight of the ponded water stretches the roof membrane.  This stretching is a 'tensile' loading.  The weakest parts of the roof membrane are its seams or its transition areas where it is wrapped over or around something.  Those are the areas where the roof system has failed, as shown in the attached photographs.

6.    I conclude that the rainfall encountered on August 17, 2017 was the 'straw that broke the camels' back' (so to speak) and several areas (mostly around the edges of the flat portion of the roof) failed and could no longer support the weight of the roof and the ponded water.  (Ex 9, pp 3-4)

3.    Williams' recommendations were:

The damaged roofing should be replaced, including the underlying roof deck.  The roof should be replaced with a new roof that uses tapered insulation (styrofoam) to slope to the roof drain.  The roof drain needs to be repositioned to allow it to collect water in the lowest point of the roofing (which is easily done using tapered styrofoam to insulate and taper the roof surface).  (Ex 9, p 4)

William's report includes photographs: Photo 1 showing the ponding and "sagged" roof deck panels.  Photo 2 showing the "sagging" roof deck panels between

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

the roof joists. Photo 3 showing a ponded area with a 2¼" water depth which was not full.  Photo 5 showing the roof drain 1¾" above the roof deck, and photos 6, 7, 8 and 9 showing additional pulling apart of the membrane after the roof had been repaired by King's Roofing after the incident. (Ex 9, photos) Williams obtained weather data and determined that slightly more than 1 inch of rain fell in the area for the three day period of 8/15/17 to 8/17/17 which was not out of the ordinary and "an intact roof should not be leaking with that sort of rainfall." (Ex 8, pp 18, 40-41) He examined the estimate provided by King's Roofing in July, 2017 and testified that it was for "maintenance" that was ***needed before*** the August, 2017 leaks. (Ex 8, p 36) Williams was aware that Dr. Matthews had been told in January, 2017 that the roof needed more extensive repairs to protect the roof from future leaks. (Ex 8, p 37) Williams testified that there had been continued leakage after King's Roofing had done their work after the incident. (Ex 8, p 42) The condition of tears in the roof membrane which Yonko noted while preparing Yonko's estimate before the incident was the same condition which Williams saw after the incident. (Ex 8, p 43) The roof drain was set too high and the ponding from the "sagged" roof would result in 5 inches of water on the roof before any of it would drain. (Ex 8, pp 46-49) The roof was no longer performing as it was originally built and the roof deck and sheeting had "certainly deteriorated".  (Ex 8, pp 48-49)

Williams further testified that his photos Exhibits 1, 2 and 3 show that between the roof joists, the roof deck panels have low spots and have "sagged", but are

-8-

supposed to be flat. (Ex 8, pp 50-51) Williams admitted, that between January, 2017 when Dr. Matthews was aware of the problems with the roof and the time of the leak in August, 2017, the corrective work had not been done.   The corrective work by King's Roofing after the incident in August, 2017 would not have prevented the leaks because King's Roofing did not understand the depth and breadth of the problems. (Ex 8, p 52) Williams admitted that the condition of the roof for a considerable time **_before_** the incident was "failing" and required that the entire deck be replaced. (Ex 8, pp 53-55)

Williams also admitted, that the prior repairs had added to the weight of the roof and combined with the ponding water weight had overcome the roof deck's ability to carry the load. (Ex 8, p 56) The weight of the ponded water which was stretching the roof membrane was not a good condition. (Ex 8, p 57) The rainfall of August, 2017 was not out of the ordinary, and if the roof had not "deteriorated" where it was "sagging" allowing the ponded water to accumulate, the leaks would not have happened, and the cause was the "deterioration" of the roof deck below the membrane.  (Ex 8, pp 60-61)

The roof had to be replaced including the underlying roof deck and the roof drain had to be repositioned to allow it to collect water at the lowest point of the roofing. (Ex 8, p 62) A cause of the loss was thus the initial "construction" and how the drain was installed too high.   (Ex 8, p 63) The condition of the roof with the sagging panels and leakage was the result of "poor design" and "poor workmanship"

-9-

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

in repairs.  (Ex 8, pp 63-64, 66) The roof was poorly "designed" to cause the "wear and tear" it has received from the weight of the water pulling the membrane apart. (Ex 8, pp 70-71)  The "design" problem resulted in the "wear and tear" because it stretched the membrane to cause the leak.  (Ex 8, pp 73, 75)

Williams had never seen a roof drain 5 inches above the sagged height of roof panels. (Ex 8, p 77) It is further "just standard common sense and knowledge for engineering purposes" that a drain should be lower than or no higher than the area it has to drain. (Ex 8, pp 77-78) The cause of the loss that allowed the water to come into the building was the "bad design" and "improper prior repairs". (Ex 8, pp 81, 83-84)

## F.   **OPINION OF DAVID WALENGA OF NEDERVELD.**

Harleysville retained the engineering firm Nederveld, Inc. to inspect the roof and determine the cause of the loss.  The work was assigned to David A. Walenga, P.E.  Walenga inspected the roof and prepared a report per copy attached as Exhibit 10.  The report concluded that the roof leaked because of defects, including failed or weak membrane seams, failed penetration flashings, and lack of proper and timely maintenance or repair. The roof lacked sufficient pitch or drainage to prevent ponding.  There had been long-term leakage into the building. There was also no indication of any damage to the roof from any weather related event of wind or rain. (Ex 10, p 4)

## **ARGUMENT**

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . ."  FRCP 56(c).

**II.  Harleysville is Entitled to Judgment as a Matter of Law Because No Covered Cause of Loss Exists as Defined in the Policy**

For coverage to exist under the terms of the policy's Businessowners Coverage Form, there must be a "Covered Cause of Loss":

**A.  Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  [Exs 12, 15, p 1 of 47.]

A Covered Cause of Loss is defined by the policy:

**3.  Covered Causes Of Loss**
Risks of direct physical loss unless the loss is:
**a.**  Excluded in Paragraph **B.** Exclusions in Section I; or
**b.**  Limited in Paragraph **4.** Limitations in Section I.  [Exs 12, 15, p 2 of 47.]

In this case, neither the damage to the roof nor the damage to the interior of the building and its personal property meet the definition of a Covered Cause of Loss because coverage is excluded and because the interior loss is limited by the Limitations in Paragraph 4.

**A. Coverage is Excluded Pursuant to Exclusion B(2)(l)**

Coverage exclusions are contained in Paragraph B of Section I – Property in the Businessowners Coverage Form.  Relevant to this case, exclusion B(2)(l) provides:

**2.**     We will not pay for loss or damage caused by or resulting from any of the following:

<div align="center">* * *</div>

**l.**     **Other Types Of Loss**

(1)     Wear and tear;

(2)     Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;  . . .

(4)     Settling, cracking, shrinking or expansion;

<div align="center">. . . .</div>

But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.  [Exs 12,15, pp 17-18 of 47.]

In Michigan, insurance contracts must be enforced according to their plain language.  *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).  The rule equally applies to policy exclusions.  *Allstate Ins Co v Keillor*, 450 Mich 412, 420; 537 NW2d 589 (1995).  "Coverage under a policy is lost if any exclusion within the policy applies to a particular claim."  *Id*.  A Court cannot create ambiguity where none previously existed in an exclusion.  *Id*.  Applying the plain language of the exclusion in question bars coverage in this case.

Yonko's estimate (Ex 7, ¶ 5) for the roof noted "deterioration open seams," which he specifically admitted was from "wear and tear".  (Ex 5, pp 38, 53-54, 57-58, 63) Williams repeated that the "wear and tear" that the roof had received was from the weight of the water pulling the membrane apart.  (Ex 8, pp 70-71) Williams opined that the "design" problem resulted in the "wear and tear" because it stretched the membrane.  (Ex 8, pp 73-75) Williams also opined that the loss was from

<div style="writing-mode: vertical-rl">**HARVEY KRUSE**   A PROFESSIONAL CORPORATION<br>ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800</div>

"[d]eterioration of the roof deck below the membrane." (Ex 8, pp 48-49; 60-61)

Woods noted "deterioration". (Ex 4, pp 7-8; 13-14) Woods, Yonko, and Williams all

testified that the roof was "sagging," leading to the claimed loss. This "sagging" is

equivalent to settling and expansion as used in the policy language.[1] (Ex 4, pp 8-12;

Ex 5, pp 49-50, 63; Ex 8, pp 50-51, 60-61, 66; Ex 9, pp 3-4) Thus, per the testimony

of plaintiff's own expert, defendant's expert, and the roofers, this policy exclusion

applies for multiple different reasons. Woods, Yonko and Williams all testified that

the roof should have been replaced long before the incident due to its failed condition

and the fact that it was multi-years past its serviceable life. (Ex 4, pp 4, 8, 10-11, 13-

14; Ex 5, pp 38, 63; Ex 8, pp 53-55, 62; Ex 9, pp 3-4; Ex 10, p 4)

Courts have found such exclusions enforceable. In *McCartha v State Farm*

*Fire & Cas Co*, unpublished opinion per curiam of the Michigan Court of Appeals,

issued August 16, 2016 (Docket No. 326689), lv den 500 Mich 947 (2017) (Ex 16),

plaintiff's own expert, just as in this case, admitted to preexisting deterioration and

that the roof needed to be replaced before the loss:

> On the evidence presented, there is no genuine issue of material
> fact that the damage to the roof consisted of wear, tear, or deterioration.
> There is no dispute that, in March 2010, before the tree limb fell in
> October 2010, plaintiff received several quotes to replace the roof and
> that, even before March 2010, plaintiff attempted to perform repairs to
> the roof himself in an area where the shingles were "stripped away" or
> "just about gone." Testimony by Jack McCauley, plaintiff's own expert

[1] *Random House Webster's College Dictionary* (2001) defines "sag" as "to sink or
bend downward...." It defines "settle" as "to cause to sink down gradually,
subside...." Thus, the terms are related as the both involve sinking.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

who observed plaintiff's property in March 2010 for the purpose of providing quotes to replace the roof and to do some interior work, testified that the roof was in "[v]ery poor condition," shingles were deteriorated, falling off, and missing, and roof boards were showing where shingles were completely off. McCauley believed there was a hole in the roof and that the roof, which appeared to be twenty years old, had not been maintained in any way. [*Id*. at slip op p 3.]

The Court found that the wear, tear, and deterioration exclusion applied to bar coverage to the roof and to the inside of the property:

> On the evidence presented, it is undisputed that the poor and deteriorated condition of plaintiff's roof was evident months before the tree limb fell and there is no evidence, only mere speculation, that the claimed damage to the roof was caused by the fallen tree limb. Accordingly, there is no genuine issue of material fact that the claimed damage falls squarely within the policy exclusion expressly excluding coverage for loss consisting of wear, tear, or deterioration. "Coverage under a policy is lost if any exclusion within the policy applies to a particular claim." *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 420; 537 NW2d 589 (1995). The exclusion also precluded coverage for the interior water damage as a direct and immediate result of the deterioration of the roof, regardless of whether the loss occurred suddenly or gradually. [*Id*. at slip op p 5.[2]]

This case should follow this law and apply the exclusion as written to bar coverage.

Plaintiff may attempt to argue that the exception to the exclusion applies to this case. Such an argument is without merit, however, as no "specified cause of loss"

---

[2] See also *Libbey-Owens-Ford Co v Ins Co of North America*, 9 F 3d 422, 429-430 (CA 6, 1993) (finding a similar exclusion regarding wear and tear unambiguous and applying it to exclude coverage for wear and tear damage); *Steven J Inc v Landmark Am Ins Co*, 97 Fed R Evid Serv 1267 (MD Pa, June 22, 2015) (applying a wear and tear and deterioration exclusion were "the roof was aging or that it had previously received repairs".); *Travelers Prop Cas Co of Am v Brookwood, LLC*, 283 F Supp 3d 1153, 1162 (ND Ala, 2017) (finding that cracks in the seams of a roofing product were excluded by the shrinking/expansion and wear and tear exclusions and that "[t]he shrinking/expansion of the roof or the wear and tear did not 'result in' the

exists in this case.  The policy defines this phrase:

> 12.   "Specified causes or loss" means the following:
> Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse: volcanic action; falling objects; weight of snow, ice or sleet; water damage.
>
> . . . .
>
> c.   Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.  [Exs 12, 15, p 29 of 47.]

"If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions." *Century Sur Co v Charron*, 230 Mich App 79, 82; 583 NW2d 486 (1998).  And again, policy language must be enforced as written.  *Rory*, 473 Mich at 461.  As written, there is no claim in this case that meets the definition of "specified causes or loss".  Therefore, the exception to the exclusion does not apply and the exclusion must be applied as written to bar coverage.

### B. Coverage is Excluded Pursuant to Exclusion B(3)(c)

Exclusion B(3)(c) equally applies to bar coverage in this case for faulty, inadequate, or defective, design, workmanship, repair, construction and maintenance:

> **3.**   We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> * * *
>
> **c.**   **Negligent Work**
> Faulty, inadequate or defective:

windstorm.").

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**(1)**   Planning, zoning, development, surveying, siting;
**(2)**   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
**(3)**   Materials used in repair, construction, renovation or remodeling; or
**(4)**   Maintenance:
of part or all of any property on or off the described premises. [Exs 12, 15, p 19 of 47.]

Again, this policy language must be applied as written. *Rory*, 473 Mich at 461.

As written, plaintiff's roofers and expert have conceded the application of this policy exclusion. Yonko admitted that the condition of the drain being 1¾" above the roof deck was a "design" problem and that the ponding and having the drain too high was going to result in leakage because it was going to cause the membrane and seams to tear and pull apart. (Ex 5, pp 55-56) Williams similarly opined that the condition of the roof with the "sagging" panels and leakage was the result of "poor design", "construction", "workmanship" and "repairs". (Ex 8, pp 56, 60-61, 63-64, 70-71, 73-75, 81, 83-84; Ex 9, pp 3-4) Yonko and Williams testified the roof membrane being pulled apart by the weight of the water was a "maintenance" problem. (Ex 5, pp 53-55; Ex 8, p 26) Walenga's report also noted "improper design", "repair", "construction" and "maintenance". (Ex 10, p 4) Everyone (Williams, Yonko, Woods, Walenga) agreed that the roof needed to be replaced before the loss, in fact a long time before that. (Ex 4, pp 4, 8, 10-11, 13-14; Ex 5, pp 38, 63; Ex 8, pp 53-55, 62; Ex 9, pp 3-4; Ex 10, p 4) Thus, again, the application of the plain language of the policy has been conceded in this case.

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

Michigan courts have enforced similar exclusions to preclude coverage in cases like the case at hand.  In *Pioneer State Mut Ins Co v Splan (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued March 18, 2003, (Docket No. 220477) (Ex 17), a roof sagged and cracked leading to internal damage to the house. The insureds attempted to blame this on snow and ice weight, but their expert conceded that defects existed in the initial construction of the house.  Exclusions existed in the policy similar to those in this case excluding coverage for inherent vice, latent defect, mechanical breakdown, settling and cracking.  The Court found it irrelevant that snow or ice may have contributed to the loss because coverage was excluded for the improper construction:

> [T]he courts of this state have rejected the "concurrent causation" theory in the context of insurance liability. As a matter of law, if one cause is covered by a policy, it does not nullify another, unambiguously excluded cause in the insurance policy.
>
> <div align="center">* * *</div>
>
> As reflected in the language of the policy, while a "collapse" caused by the weight of ice or snow may be a covered loss under the policy, ***the unambiguous policy exclusion for latent structural defects and faulty design or construction clearly preclude coverage here***. . . .  Moreover, the policy expressly sets forth an exclusion for which Pioneer will not provide coverage, which specifically includes latent defects and faulty design and construction. "An insurance policy must be enforced in accordance with its terms" and "we will not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999) (citations omitted). The trial court correctly granted summary disposition to Pioneer on this issue because there is no genuine issue of material fact regarding the cause of the damages in this case and Pioneer is entitled to judgment as a matter of law.  [*Pioneer State Mut Ins Co*, at slip op pp 5-6. (emphasis added).]

*Pioneer State Mut Ins Co*, was subsequently followed by Judge Ludington in

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

*Telerico v Nationwide Mut Fire Ins Co*, 2012 WL 3609882 (ED Mich, 2012) (Ex 18).

In that case, the plaintiff's expert admitted that the pitch of the roof was not sufficiently angled, the rafters were too far apart, and the cross-members lacked proper collar ties.  *Id*. at slip op p 4. The Court concluded that, given these facts, coverage was unambiguously excluded by the policy exclusions:

> In this case, as noted, the insurance policy covers property damage, but excludes from coverage damage caused by structural defects. Specifically, the policy excludes coverage for damage to the residence "resulting directly" from any "inherent vice, latent defect, ... settling, cracking, shrinking, bulging or expansion of ... roofs or ceilings." Ins. Policy, at D2, D3. Moreover, if one of these causes "contributes to the loss," the policy also excludes coverage for damage "resulting directly or indirectly" from a "fault, weakness, defect or inadequacy in the ... design, workmanship, construction, [or] materials" of the residence. *Id.* at D2. Thus, the policy unambiguously excludes from coverage damage caused by structural defects in the residence.
>
> * * *
>
> Because the undisputed evidence of Plaintiff's own expert is that the structural deficiencies of the house caused the damage by allowing excessive buildup of snow and ice on the house's roof, the damage is excluded from coverage. Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.  [*Id*. at slip op p 8.[3]]

---

[3] See also *Suttmann v Wolverine Mut Ins Co*, unpublished opinion per curiam of the Michigan Court of Appeals, issued December 21, 1999 (Docket No. 211904) (Ex 19) (excluding coverage for a claimed buildup of snow on the roof because the snow accumulated due to faulty design and construction and "the damages were not covered because the policy specifically excluded damages caused by faulty, inadequate or defective design, specifications, workmanship, construction or materials."); *Hostetler v State Farm Fire & Cas Co*, 521 NE2d 1357, 1360 (Ind App, 1988) (The insured claimed that snow and ice caused a roof to sag and caused ceiling damage.  The Court affirmed summary judgment because an engineer testified that faulty design/construction caused the sagging.); *Alwart v State Farm Fire & Cas Co*, 131 NC App 538, 542 (1998) ("Applying  . . . our own reading of the policy language, we hold that the policy in this case not only excluded the cost of repairing the faulty construction, workmanship, and materials, but also the cost of repairing the

HARVEY KRUSE   ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

This case should follow the guidance of *Pioneer State Mut Ins Co* and *Telerico* to apply the policy provisions as written to exclusion coverage in this case. *Rory*, 473 Mich at 461.

Plaintiff may attempt to argue that coverage should still exist for the loss inside the structure pursuant to the exception to the exclusions stating that "But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss" (Exs 12,15, p 19 of 47)  Such ensuing loss provisions do not change coverage.

As outlined above, to be a "Covered Cause of Loss" as defined by the policy, the loss cannot be "Excluded in Paragraph B. Exclusions in Section I; or... Limited in Paragraph 4. Limitations in Section I." (Exs 12, 15, p 2 of 47) But as outlined above,

---

'ensuing loss,' whether direct or indirect, caused by the faulty construction, workmanship, and materials."); *Whitaker v Nationwide Mut Ins Co*, 115 F Supp2d 612, 616 n3 (ED VA, 1999) ("The Policy thus specifically excludes 'loss resulting directly or indirectly from . . . a fault, weakness, defect or inadequacy in the . . . design, workmanship, construction materials . . . .' under certain circumstances (emphasis added)."); *Morgan v Auto Club Family Ins*, 899 So2d 135, 137 (La App, 2005) (finding that the faulty, inadequate or defective workmanship exclusion applied to bar all coverage where the expert found that the damage to the house was due to a faulty attic ventilation design, which caused resulting mold damage); *Terminal Freezers v US Fire Ins*, 345 Fed Appx 305, 306 (CA 9, 2009) ("Here, the district court correctly concluded that Terminal's faulty workmanship was the efficient proximate cause of the cold storage facility's excessive ice formation, and that faulty workmanship is not a 'covered peril' under Terminal's policy . . . ." ); and *Gargano v Vigilant Ins Co*, 494 Fed Appx 98, 101 (CA 1, 2012), citation omitted ("Applying the faulty construction or maintenance exclusion is just as obvious. "Faulty" here does not mean negligent or blameworthy on the part of a homeowner or his contractor, but simply tainted by imperfection. Thus, the uncontradicted conclusion relied on by the district court, that a cause of the damage was the failure to prime coat the shingles on

HARVEY KRUSE  A PROFESSIONAL CORPORATION  ATTORNEYS & COUNSELORS  1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Exclusion B(2)(l) applies to bar all coverage in this case.  Similarly, as discussed in the next section of this brief, the Limitations provision also precludes coverage for loss or damage from rain to the interior of the building. "If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions." *Century Sur Co*, 230 Mich App at 82. As defined in this case, there is no "Covered Cause of Loss". Therefore, the ensuing loss provision of Exclusion B(3)(c) cannot apply.[4]

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION

ATTORNEYS & COUNSELORS

1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

---

all surfaces, counts as faulty maintenance....").

[4] Again, courts addressing similar issues have reached similar conclusions regarding the ensuing loss provision.  In *Morgan v Auto Club Family Ins Co*, 899 So2d 135 (La App 3 Cir, 2005), a faulty design resulted in a lack of ventilation in the roof.  The insured attempted to overcome a faulty, inadequate or defective workmanship exclusion by pointing to an ensuing loss provision. The Court, however, noted that the application of a separate exclusion made the ensuing loss provision inapplicable: "In the present case, loss of property caused by mold is specifically excluded from coverage under the policy even though the mold damage may have resulted from lack of ventilation in the attic."  *Id*. at 137. Similarly, in *Terminal Freezers In cv US Freezers Inc*, 345 US Fed Appx 305 (CA 9, 2009), the Court applied a faulty design/workmanship exclusion to exclude coverage for damages resulting for an improperly designed cold storage facility.  The insured, however, attempted to resurrect coverage through an ensuing loss exception to the exclusion.  The Court rejected the argument, noting that any ensuing loss was excluded by a separate exclusion for ice.  *Id*. at 306-307.   See also *Libbey-Owens-Ford Co*, 9 F 3d at 429-430 (finding that the loss would have had to resulted from something separate from the wear and tear excluded by the policy in order for coverage to exist under the exception to the wear and tear exclusion.)  *TRAVCO Ins Co v Ward*, 715 F Supp 2d 699, 719 (ED Va, 2010) (Ruling that "An ensuing loss provision does not create coverage where none exists. Rather, an ensuing loss provision operates as an exception to an exclusion, restoring coverage that has otherwise been removed by an exclusion." And concluding that no coverage applied because of policy exclusion that otherwise applied to the claimed loss.); *Divine Motel Group, LLC v Rockhill Ins Co*, No. 3:14-CV-31-J-34JRK, 2015 WL 4095449, at *9 (MD Fla, July 7, 2015) (Ex 20) ("For the ensuing loss exception to apply, the inadequate maintenance and defective

This concept is similar to when there are concurrent causes of a loss one of which is covered by the policy and the other is not. Michigan Courts have concluded that, when there are two causes of a loss and one is excluded, no coverage can exist. "[T]he default rule under Michigan law is that a loss is *not* covered when it is concurrently caused by the combination of a covered cause and an excluded cause." *Iroquois on the Beach Inc v Gen Star Indemnity Co*, 550 F3d 585, 588 (CA 6, 2008) (emphasis original); see also *Vanguard Ins v Clarke*, 438 Mich 463; 475 NW2d 48 1991, rev'd in part on other grounds by 469 Mich 41 (2003). All that matters is that an exclusion applies, and the exclusions in this case clearly apply.

## C. The Limitations Provision Precludes Coverage for the Interior of the

repairs must "result in" a Covered Cause of Loss. Here, the inadequate maintenance, faulty design, and defective repairs 'resulted in' water intrusion. Water intrusion is not a "Covered Cause of Loss" under the Policy unless the water entered the Property through damage caused by a "Covered Cause of Loss." The water entered the Property through damage caused by inadequate maintenance, faulty design, and defective repairs, but as stated above, these faulty workmanship damages are not Covered Causes of Loss. The key factor missing from this circular argument is the identification of any cause of loss that is *not* excluded from the Policy's coverage.") *Peek v Am Integrity Ins Co of Florida*, 40 Fla L Weekly D2199; 181 So 3d 508, 513 (Dist Ct App, 2015) ("Exclusions must be read in conjunction with other policy provisions, and ensuing loss exceptions are not applicable if the ensuing loss was directly related to the original excluded risk."); *Mag-Dolphus, Inc v Ohio Cas Ins Co*, 40 F Supp 3d 817, 832-833 (SD Tex, 2014) (finding that the faulty workmanship exclusion applied and that the ensuing loss provision did not apply because coverage was precluded by the policy's limitation provision); and *Wright v Safeco Ins Co of Am*, 124 Wash App 263, 274–75; 109 P3d 1, 7 (2004) ("Because Wright's policy contains a provision that specifically excludes damages caused by mold, the ensuing loss provision of the exclusion in Wright's policy does not cover mold damages.") Applying this law to the case at hand, the ensuing loss provision cannot create coverage in this case as coverage is excluded by the separate and distinct coverage provision.

HARVEY KRUSE  A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS  1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**Building**

In addition to the exclusions in B(2) and (B(3) discussed above, any claim for the loss to the interior of the building is also not a covered loss because of the Limitations provision of the policy.  Specifically, Limitation 4(a)(5) provides that Harleysville does not pay for loss or damage to the interior of any building caused by or resulting *from rain*, absent certain preexisting conditions not in existence here:

4.   **Limitations**
 a.   We will not pay for loss of or damage to:

* * *

(5)   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a)   The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b)   The loss or damages caused by or results from thawing of snow, sleet or ice on the building or structure.  [Exs 12, 15, p 2 of 47.]

In William's opinion, the structural defects and improper maintenance led to the collection of rain water that pooled on the roof deck due to the improperly designed and constructed drain. (Ex 8, pp 18, 40-41; Ex 9, pp 3-4) These facts must be reviewed in light of the policy language as written as the policy must be applied according to its plain meaning. *Rory*, 473 Mich at 461. Under the Limitations provision quoted above, the subsequent damage to the interior of the structure from rain can only be covered if there is first a covered cause of loss *to the roof*.  As discussed in the above sections, however, no Covered Cause of Loss occurred *to the*

**HARVEY KRUSE**   ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

-22-

*roof* in this case because coverage *to the roof* was already excluded by exclusion B(2)(l) and exclusion B(3)(c).  Per the policy definition of Covered Cause of Loss, a physical loss excluded under paragraph **B** cannot be a Covered Cause of Loss.  (Exs 12, 15, p 2 of 47) Because there was no loss *to the roof* that falls outside of the exclusions contained in paragraph **B**, there can be no Covered Cause of Loss, and thus, there can be no coverage. (Exs 12, 15, pp 1-2 of 47)

Court have again enforced such language as written. In *Horizon III Real Estate v Hartford Fire Ins Co*, 186 F Supp 2d 1000, 1006–07 (D Minn, 2002), addressing a nearly identical limitation provision the court stated: "Clearly, even under Horizon's assessment of the circumstances, the damage was caused by, or resulted from, a torrential rain storm. Therefore, under the unambiguous language of the insurance policy, the damage is excluded, if it is not otherwise covered...."  The Court went on to conclude that no coverage existed under the terms of the policy for the rain beyond a $25,000 sewer backup provision.  *Id*. at 1008-09.

In *Mag-Dolphus, Inc*, the insured suffered water damage from rain through roof.  The Court concluded that the faulty workmanship exclusion applied to bar coverage, noting that plaintiff's own expert opined that the roof was improperly installed.  *Mag-Dolphus, Inc*, 40 F Supp 2d at 832-833.  The plaintiff attempted to then argue that there was still coverage for the water intrusion based on the ensuing loss provision of the policy. The Court rejected this: "Although plaintiffs argue that the negligent workmanship exclusion does not exclude claims for water intrusion into

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

the property, plaintiffs fail to cite any provision of the policy that provides coverage for such losses." *Id.* at 832.  The Court then went on to explain, quoting from the insurer's brief, that there could not be a covered cause of loss to allow the ensuing loss provision to apply based on the limitations provision of the policy excluding for rain, just as in this case:  "Plaintiffs' experts never state that the roof first sustained damage as a result of a covered cause of loss. All of the reports state the loss was a result of the negligent roof installation. Therefore, the exception to the exclusion does not apply in this case." *Id.* at 832 n32, citation omitted.

See also *Einspahr v United Fire & Cas Co*, No. A-99-371, 2000 WL 758654, at *4 (Neb Ct App, June 13, 2000) (Ex 21) (Granting summary disposition when rain entered through a faulty roof membrane because "We recognize that the policy provides an exception to this exclusion in that rain damage is covered if the building sustains damage as described elsewhere in the policy. However, Einspahr has not shown, nor do we discern from the record, that any damage was caused to the building in which Einspahr's establishment was housed. Accordingly, his losses, which resulted from rain, were excluded by the clear language of this policy."); *Divine Motel Group LLC*, 2015 WL 4095449 at  slip op pp 7-8 (finding that there was no coverage for the water intrusion per the limitation provision because the cause of the loss to the roof was excluded under the policy terms for faulty workmanship and wear and tear); and  *S Fifth Towers, LLC v Aspen Ins UK, Ltd*, No. 3:15CV-151-CRS, 2018 WL 1522349, at *9 (WD Ky, March 28, 2018) (Ex 22) ("The policy does

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

not cover damage to the interior of a structure or its contents caused by or resulting from rain. Thus, on its face, it appears that this clear and unambiguous limitation precludes coverage." The Court granted summary judgment because the insured could not show a prior covered loss to the roof or walls.)

This case falls directly in line with this authority.  Just as in those cases, no coverage can exist in this case for the rain entering the building.  Therefore, there is no Covered Cause of Loss, and Harleysville is entitled to judgment as a matter of law.

## RELIEF REQUESTED

Harleysville respectfully requests that this Honorable Court grant it summary judgment for the reasons stated above and that any costs associated with this motion be imposed on plaintiff.

**CERTIFICATE OF SERVICE**
I hereby certify that, on the below listed date, the foregoing pleading has been electronically filed with the Clerk of the Court via the Electronic Case Filing system which will send notice of filing to all attorneys of record.
/s/Janice A. Albertson
Secretary at Harvey Kruse
DATED:  January 15, 2019

Respectfully submitted,

BY: /s/Michael F. Schmidt
    Michael F. Schmidt P25213
    Nathan Peplinski P66596
    HARVEY KRUSE P.C.
    1050 Wilshire Drive, Suite 320
    Troy, MI  48084-1526
    (248) 649-7800

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800